IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK13-80203-TLS |
| | ) | |
| BRODKEY BROTHERS, INC., et al., | ) | CH. 11 |
| | ) | |
| Debtors. | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on September 3, 2013, on a motion for order authorizing distribution of a portion of sale proceeds to over-secured creditor filed by Sherman F. Brodkey (Fil. #157), and an objection to claim of Sherman Brodkey and objection to motion for order authorizing distribution filed by Tache, USA, Inc. and Jay Gems, Inc., d/b/a Simply Diamonds (Fil. #323). Evidence was received, and the court deferred ruling on these matters.

Another hearing was held in Lincoln, Nebraska, on September 18, 2013, on a motion to approve settlement agreement and mutual release filed by Debtors (Fil. #319), and an objection filed by Tache USA, Inc. and Jay Gems, Inc., d/b/a Simply Diamonds (Fil. #332). Evidence was offered and received. In addition, the court considered all of the evidence offered and received at the September 3, 2013, hearing to be offered and received at this hearing. The parties were given the opportunity to provide the court with any authority regarding the effect of paragraph 7 of the Guaranty with respect to the subrogation claim of Mr. Brodkey, and the matter was taken under advisement.

At each hearing, Robert Ginn and Jennifer Cooke appeared for the Consolidated Debtors ("Debtors"); T. Randall Wright and Emily McElravy appeared for Sherman Brodkey ("Mr. Brodkey"); Michael Mullen appeared for Tache USA, Inc. and Jay Gems, Inc., d/b/a Simply Diamonds ("Objecting Creditors"); and Patrick Orr and Michael Whaley appeared for the Unsecured Creditors Committee ("Committee").

For the reasons discussed below, the subrogation claim of Mr. Brodkey is allowed, his motion for payment is granted and the motion to approve settlement is granted. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), and (K).

### *Background*

The underlying facts are not in dispute. Debtors filed their Chapter 11 proceedings on February 4, 2013, and their motion for joint administration was granted on February 5, 2013 (Fil. #10).

On or about May 31, 2012, Debtors entered into a credit and security agreement with Salus Capital Partners, LLC ("Salus"), pursuant to the terms of which Salus made a loan to Debtors secured by a first position lien on substantially all of Debtors' assets. On that same date, Mr. Brodkey, the president of Debtors, executed a Guaranty in favor of Salus for the obligations owed by Debtors.

As of September 30, 2012, Debtors owed approximately $1,892,000.00 to Salus and an aggregate of approximately $650,000.00 to the Objecting Creditors. As of October 2, 2012, Debtors, Mr. Brodkey, and Salus entered into a Creditors' Composition Agreement ("Composition Agreement"), which essentially set forth a plan for restructuring Debtors and improving their liquidity.

Debtors became in default on their obligations to Salus, and Salus demanded payment from Mr. Brodkey pursuant to the Guaranty executed by him. Salus obtained two payments from Mr. Brodkey – a payment of $316,411.78 on or about December 28, 2012, and a payment of $25,484.27 on or about January 4, 2013. On February 4, 2013, Debtors filed their Chapter 11 bankruptcy petitions, and the cases were subsequently jointly administered. At the time of bankruptcy filing, Debtors were indebted to Salus in an amount slightly less than $1,000,000.00, which amount was secured by a first priority security interest in substantially all of Debtors' assets. Mr. Brodkey filed a proof of claim (proof of claim #11) in the amount of $345,455.35 for "Subrogation Rights" secured by Debtors' assets for the amounts he paid pursuant to the Guaranty he executed for the Salus loan, plus interest.[1] Tache USA, Inc. filed a secured claim in the amount of $398,164.39 asserting a lien on certain consigned goods and jewelry. Jay Gems, Inc., d/b/a Simply Diamonds, filed a claim in the amount of $558,959.00 also asserting a security interest in certain consigned goods. Notwithstanding those proofs of claim, the Objecting Creditors also claim to be secured by a second lien on all of Debtors' assets, subject only to the lien of Salus.

After bankruptcy filing, Debtors liquidated their assets pursuant to agreements approved by the court. Since the amount owed and the security interest held by Salus were undisputed, Debtors obtained an order authorizing a distribution of a portion of the liquidation proceeds to Salus (Fil. #127). As a result, Debtors paid Salus' over-secured claim in full and there remained approximately $1,382,491.84 in Debtors' trust account as of July 31, 2013. Most of those funds represent the proceeds of the sale of Debtors' assets and are available to pay to creditors secured by those assets. However, approximately $500,000.00 represents commissions earned by the bankruptcy estate on the sale of non-owned assets during the post-petition liquidation sales and are not subject to any security interests. The exact amounts in each category of funds are unclear (since Debtors have not yet filed a report of sale), but the parties agree that the proceeds attributable to the sale of Debtors' assets are insufficient to pay in full the lien claims of the Objecting Creditors and the subrogation claim of Mr. Brodkey.

---

[1] Mr. Brodkey also filed proof of claim #68 for $990,095.84 as an unsecured claim for amounts owed pursuant to loans he made to Debtors.

Subsequently, Mr. Brodkey filed a motion for order authorizing distribution of a portion of the sale proceeds to himself as an over-secured creditor (Fil. #157). The Objecting Creditors objected to the motion (Fil. #237), as did Debtors and the Committee (Fil. #204). A hearing was held on June 3, 2013, at which time this court deferred ruling on the motion and gave interested parties a deadline of July 5, 2013, to object to proof of claim #11 of Mr. Brodkey, which deadline was later extended to August 15, 2013.

The Objecting Creditors did file a timely objection to Mr. Brodkey's proof of claim (Fil. #323). Meanwhile, Debtors and the Committee entered into a settlement agreement with Mr. Brodkey under the terms of which Mr. Brodkey would accept immediate payment of the sum of $345,455.35 for his subrogation claim and would withdraw his unsecured claim. Hearings were held on Mr. Brodkey's motion for payment of his subrogation claim, the objection to claim filed by the Objecting Creditors, and the motion to approve the settlement agreement, which were all taken under advisement.

Accordingly, this court must first decide whether Mr. Brodkey has a valid subrogation claim secured by the proceeds from the sale of Debtors' assets. If he does, this court must then determine the priority of that claim vis-à-vis the Objecting Creditors. Finally, and only after the foregoing are determined, the court must then decide whether the settlement agreement between Mr. Brodkey, Debtors, and the Committee should be approved.

## *Discussion*

1.    Mr. Brodkey's Proof of Claim.

Under 11 U.S.C. § 502, a proof of claim filed in a bankruptcy proceeding is deemed allowed unless a party in interest objects. *Gran v. Internal Revenue Serv. (In re Gran)*, 964 F.2d. 822, 827 (8th Cir. 1992). Under Federal Rule of Bankruptcy Procedure 3001(f), a proof of claim executed and filed in accordance with the bankruptcy rules shall constitute prima facie evidence of the validity and amount of the claim. "The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail. If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence 'to prove the validity of the claim by a preponderance of the evidence.'" *Id.* at 827 (quoting *California State Bd. of Equalization v. Official Unsec. Creditors' Comm. (In re Fidelity Co.)*, 837 F.2d 696, 698 (5th Cir. 1988)). Using those guidelines, the proof of claim of Mr. Brodkey will be considered.

Mr. Brodkey filed his timely proof of claim in the amount of $345,455.35. Paragraph 2 of the claim states the basis of the claim as "Subrogation Rights." The claim also asserts that it is secured by personal property, including equipment, inventory, and accounts. Mr. Brodkey claims that he is entitled to post-petition interest, costs, charges, and attorneys' fees pursuant to 11 U.S.C. § 506(b). Attached to Mr. Brodkey's proof of claim is a copy of the Guaranty executed by Mr. Brodkey and from which his subrogation claim arises. He also attaches copies of two documents from Morgan Stanley confirming a transfer of funds for the benefit of Salus. There does not appear to be any

dispute that the claim of Mr. Brodkey was executed and filed in accordance with the bankruptcy rules. Therefore, the claim constitutes prima facie evidence of the validity and amount of the claim. Thus, the burden shifts to the Objecting Creditors to produce evidence rebutting the claim of Mr. Brodkey.

The Objecting Creditors argue that there are numerous reasons why the claim of Mr. Brodkey should be disallowed. First, the Objecting Creditors argue that Mr. Brodkey agreed to subordinate the debts owed to him by Debtors to all existing and future indebtedness owed to the Objecting Creditors. In support, the Objecting Creditors point to paragraph 9.04 of the Composition Agreement entered into between and among Mr. Brodkey, Debtors, and Salus, which provides as follows:

> 9.04    Subordination of Insider Indebtedness. Sherman Brodkey and other applicable members of the Brodkey family will subordinate the debt obligations owing to them by the Company in the approximate amount of $1,025,000 to all existing and future indebtedness of the Company, including, without limitation, the Salus Loan, the Vendor Notes and Post-Restructuring Claims, and will receive no payments on such obligations until such time as the Salus Loan and the Vendor Notes are paid in full.

The Objecting Creditors believe that by the foregoing language, Mr. Brodkey has subordinated his subrogation claim to their indebtedness. I disagree.

First, I note that the Objecting Creditors are not parties to the Composition Agreement. They are certainly mentioned several times in the Composition Agreement as second lienholders, but they are not parties. It is difficult to see how the Objecting Creditors can claim some benefit from a contract to which they are not a party. Even if the Objecting Creditors could claim such a benefit, through third-party beneficiary theories or otherwise, sufficient evidence was introduced at the September 3, 2013, hearing to clarify what was meant by the "debt obligations" owed to Mr. Brodkey and the Brodkey family. Specifically, Mr. Brodkey and family members made loans to Debtors evidenced by promissory notes dated July 29, 2009, April 12, 2011, and July 5, 2012, for which Mr. Brodkey filed proof of claim #68 in the amount of $990,095.84 as an unsecured claim. Mr. Brodkey believes that those are the debt obligations to which the Composition Agreement refers. Further, Mr. Brodkey points out that he had not yet made any payments under the Guaranty to Salus as of the time of the Composition Agreement; therefore, paragraph 9.04 of that agreement could not possibly have been referring to the amounts claimed in the subrogation claim. Finally, it is clear that paragraph 9.04 only subordinated "debt obligations owing to" Mr. Brodkey and the amounts set forth in the subrogation claim were not "owing" on the date that agreement was executed.

The Objecting Creditors next argue that Mr. Brodkey has failed to identify the type of subrogation to which he is entitled – i.e., statutory subrogation under § 509 of the Bankruptcy Code, or equitable subrogation under state law. Mr. Brodkey's counsel subsequently acknowledged that statutory subrogation under § 509 of the Bankruptcy Code applies only to post-petition payments and, therefore, is not applicable. Thus, Mr. Brodkey is proceeding on an equitable subrogation claim.

The Nebraska Supreme Court has articulated the factors to consider in evaluating a subrogation claim under Nebraska law:

> The doctrine of subrogation includes every instance in which one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability. The doctrine applies where a party is compelled to pay the debt of a third person to protect his own rights or interest, or to save his own property. Subrogation is not allowed where the debt paid is one for which the payor is primarily liable.

*Chadron Energy Corp. v. First Nat'l Bank of Omaha*, 236 Neb. 173, 194, 459 N.W.2d 718, 734 (1990) (citations omitted). The Nebraska Supreme Court has further stated that the principle of subrogation is applied to subserve the ends of justice and to do equity in the particular case. *J.J. Schaefer Livestock Hauling, Inc. v. Gretna State Bank*, 229 Neb. 580, 593, 428 N.W.2d 185, 193 (1988).

Upon consideration of those factors, the Objecting Creditors assert that Mr. Brodkey is not entitled to subrogation because he was "primarily liable" for the debt he paid since the Guaranty he executed was absolute and unconditional. Mr. Brodkey, on the other hand, argues that his liability was secondary to Debtors' primary obligation to pay. In fact, the Objecting Creditors admit in their brief that Mr. Brodkey would not have had any liability if Debtors had not defaulted, but that once default occurred, Mr. Brodkey became primarily liable to pay the debt. Again, the Objecting Creditors' argument is not compelling. Certainly, there is no doubt that Mr. Brodkey was the primary party liable under the terms of his Guaranty. In fact, he was the only person liable under the terms of his Guaranty. However, Mr. Brodkey did not personally sign (in his individual capacity) the promissory note and other indebtedness covered by his Guaranty. His obligation to pay did not arise until an event of default by Debtors. Thus, it is clear that Mr. Brodkey was a guarantor, and not a primary obligor under the debt instruments for purposes of subrogation.

The Objecting Creditors next submit that the express terms of the Guaranty executed by Mr. Brodkey include several waivers, including those contained in paragraph 7. In its entirety, paragraph 7 of the Guaranty provides as follows:

> 7. **Waiver of Subrogation**. Until the Obligations have been paid in full and any commitments of Lender or facilities provided by Lender with respect to the Obligations have been terminated, Guarantor waives any right of subrogation, reimbursement, indemnification, and contribution (contractual, statutory or otherwise) including, without limitation, any claim or right of subrogation under the Bankruptcy Code (Title 11, United States Code) or any successor statute, arising from the existence or performance of this Guaranty, *and Guarantor waives any right to enforce any remedy which Lender now has or may hereafter have against Borrowers,*

*and waives any benefit of, and any right to participate in, any security now or hereafter held by Lender.* (Emphasis added).

The Objecting Creditors argue that the italicized clause set forth above is a separate waiver from the remainder of the paragraph and is not subject to the "[u]ntil the Obligations have been paid in full" language at the beginning of the paragraph. As such, the Objecting Creditors assert that Mr. Brodkey has waived any right to the security interest held by the lender. I disagree. To separate that particular waiver clause from the introductory limitation clause would require a tortured reading of the paragraph. Reading the paragraph as a whole, "[u]ntil the Obligations have been paid in full . . ., Guarantor waives any right of subrogation, . . . and Guarantor waives any right to enforce any remedy which Lender now has . . . ." Thus, both waivers are subject to the introductory limitation clause.

A more basic issue is the effect of the limitation clause on the waivers contained in the paragraph. It is undisputed that the pre-petition Guaranty payments made by Mr. Brodkey did not pay in full the indebtedness owed to Salus. On the date of bankruptcy filing, Salus was still owed an amount slightly less than $1,000,000.00. Salus was not paid in full until the liquidation sale of its collateral post-bankruptcy filing. Therefore, since Mr. Brodkey waived his subrogation rights until Salus had been paid in full, and since Salus had not been paid in full on the date of bankruptcy filing, did Mr. Brodkey have a claim at all for subrogation on the date of bankruptcy filing?

11 U.S.C. § 101(5) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Thus, it is clear that the definition is intentionally broad to include contingent, unmatured, and even disputed claims. In fact, the legislative history of 11 U.S.C. § 101(9)(A), defining "creditor" states: "A guarantor of or surety for a claim against the debtor will also be a creditor, because he will hold a contingent claim against the debtor that will become fixed when he pays the creditor whose claim he has guaranteed or insured." H. Rep. No. 95-595, 95th Cong. 1st Sess. 309-10 (1977). Paragraph 7 of the Guaranty is not a complete waiver of subrogation, but is a limited waiver that only applies until the lender is paid in full. Thus, it is clear that while Mr. Brodkey's subrogation claim was subject to a limited waiver and was, therefore, contingent on the date of bankruptcy filing, it was a claim nonetheless.

Having now addressed all of the objections raised by the Objecting Creditors to the validity of Mr. Brodkey's subrogation claim, the objections are overruled and Mr. Brodkey's subrogation claim is allowed.

2.    Priority.

The next issue to be addressed is the priority of the subrogation claim as against the secured claims of the Objecting Creditors. As of this date, no interested party has filed an objection to the validity of the security interests claimed by the Objecting Creditors, although the Committee has indicated that it may do so. However, since no objection has been filed as of this date, and since Debtors seem to have conceded the second lien position of the Objecting Creditors by virtue of

several references in the Composition Agreement and other documentation, it will be assumed for purposes of this Order that the Objecting Creditors have a valid and perfected second lien position in the proceeds of the sale of Debtors' collateral. To be clear, the issue as to the validity of that security interest is not at issue and, therefore, is not being decided – it is simply being assumed for purposes of this Order.

The Objecting Creditors argue that it would be inequitable to allow Mr. Brodkey's subrogation claim to have priority over their second lien position in Debtors' collateral proceeds. Specifically, the Objecting Creditors argue that subrogation is a creature of equity, and that a distribution to Mr. Brodkey, an insider of Debtors, would be unfairly prejudicial to them. The Objecting Creditors argue that after the Composition Agreement was entered into in October 2012, they supplied more products to Debtors because they were recognized in the agreement as second lienholders. In fact, the Objecting Creditors submitted two affidavits stating that they relied upon statements by Mr. Brodkey that he would not get paid until all other creditors were repaid when they made decisions to supply additional products to Debtors. However, the statements asserted in those affidavits do not reference his subrogation rights. Further, at the time those statements were allegedly made by Mr. Brodkey, he had not yet made payment to Salus under his Guaranty and could not possibly have been referring to his subrogation rights. Also, the Objecting Creditors produced no evidence to substantiate their claim that additional products were provided after the Composition Agreement was signed.

In addition, there is no dispute that the Salus claim would have been $345,455.35 (plus interest) higher if Mr. Brodkey had not made his payments. Mr. Brodkey is not seeking any greater amount than Salus would have been entitled to receive. The Objecting Creditors have not claimed that they somehow detrimentally changed their position in reliance on the lower balance due to Salus after Mr. Brodkey's payments. Accordingly, it would not be inequitable for Mr. Brodkey's subrogation claim to have priority over the Objecting Creditors.

     3.       Settlement Agreement.

Debtors, Mr. Brodkey, and the Committee have entered into a settlement agreement regarding Mr. Brodkey's claims. The Objecting Creditors have objected to the motion to approve the settlement. In short, the settlement provides for (I) payment of $361,450.00 by Debtors to Mr. Brodkey in full satisfaction of claim #11 (the subrogation claim);[2] (ii) Mr. Brodkey will waive any further claim against Debtors' estates, including his general unsecured claim #68; and (iii) mutual releases among the parties.

A bankruptcy court may approve a settlement over the objection of a party as long as it is in the best interest of the estate as a whole. *Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In*

---

[2]The settlement agreement does not identify the source of the funds for this payment, but based on the arguments by counsel, it seems clear that the funds would be paid from the proceeds of the sale of Debtors' assets.

*re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128, 1138 (8th Cir. 1984); Fed. R. Bankr. P. 9019. In determining whether a settlement is fair, reasonable, and adequate, the court must consider all factors bearing on the fairness of the settlement, including the probability of success in the litigation; the difficulties, if any, to be encountered in collection; the complexity of the litigation involved and the expense, inconvenience, and delay associated with it; and the paramount interest of the creditors and a proper deference to their reasonable views. *Flight Transp. Corp. Sec. Litig.*, 730 F.2d at 1135 (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)); *ReGen Capital III, Inc. v. Official Comm. of Unsec. Creditors ( In re Trism, Inc.)*, 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002).

The settlement essentially calls for payment of Mr. Brodkey's subrogation claim in full, other than a relatively small amount of interest. It also calls for waiver of Mr. Brodkey's general unsecured claim of almost $1,000,000.00. In light of the portion of this Order overruling the objection to Mr. Brodkey's subrogation claim, any concession by Mr. Brodkey, however small, is beneficial to the creditors of the estate. Further, Mr. Brodkey is waiving a sizeable unsecured claim. Granted, absent waiver of that claim, he would likely be subjected to litigation seeking to subordinate that claim to other creditors. Thus, by his waiver the creditors save the expense, risk, and delay of that litigation. Accordingly, I find that the settlement agreement is fair, reasonable, and adequate, and should be approved.

IT IS, THEREFORE, ORDERED that:

1.      The objection to claim of Mr. Brodkey (Fil. #323) is overruled and his claim is allowed as filed;

2.      Mr. Brodkey's motion for order authorizing distribution of a portion of sale proceeds (Fil. #157) is granted and the objection by Tache, USA, Inc. and Jay Gems, Inc., d/b/a Simply Diamonds (Fil. #323) is overruled; and

3.      The motion to approve settlement agreement and mutual release (Fil. #319) is granted and the objection filed by Tache USA, Inc. and Jay Gems, Inc., d/b/a Simply Diamonds (Fil. #332) is overruled.

DATE:  October 15, 2013.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
     \*Robert Ginn/Jennifer Cooke
     \*T. Randall Wright/Emily McElravy
     Michael Mullen
     Patrick Orr/Michael Whaley
     United States Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.